[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Sharon Ann Charellia, were married on May 26, 1962 in Danbury, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage and no minor children have been born to the defendant wife since the date of CT Page 5504 marriage of the parties. Neither party has received state assistance. The parties have three adult children ages thirty-seven, thirty-five and thirty.
The parties have been separated since September, 1998.
The plaintiff became romantically involved with another woman prior to July 14, 1998 which is the date the dissolution action papers were served on the defendant. The plaintiff and the defendant separated in September of 1998, at which time the plaintiff moved in with the other woman and continues to reside with her up to the present time. In late July or early August, 1998, while still residing in the family home with the defendant, the plaintiff first commenced to have sexual relations with the woman he is continuing to reside with. The parties are in dispute as to the cause of the breakdown. The court finds from the evidence presented that the plaintiffs relationship with the other woman is the primary cause of the breakdown of the marriage. The other reasons for the breakdown have to do with lack of communication between the parties and financial difficulties.
The plaintiff is fifty-nine years old.
The plaintiff has health problems including hypertension for which he takes medication since 1985.
The plaintiff suffered a mini-stroke in 1987. He was first diagnosed with high blood pressure in 1985. The medication that he takes for the high blood pressure has the effect of depressing him and also results in loss of energy. At the present time he is unable to work full-time as a handyman on a regular basis.
During the thirty-one years he was employed by the City of Danbury Fire Department, he had part-time jobs in addition to his full-time employment for approximately twenty-eight of those thirty-one years.
The plaintiffs financial affidavit dated February 3, 2000 shows a deduction of $31 weekly from his disability income, and $4 weekly for Connecticut state tax. Those deductions are voluntarily taken by him to be used against taxes that he may have to pay on his handyman income.
In the calendar year 1999, the plaintiff had $13,250 gross income from his handyman work. From that is deducted materials in the amount of $2824, sales tax of $138, labor for outside help of $5640, leaving a gross taxable income of $4689 or $89 weekly. The handyman work that he does includes painting, light carpentry, landscaping, fencing, roofing, electrical, building small stone walls and cement work. CT Page 5505
The plaintiff presently has gross weekly expenses of $1157. The plaintiff does not pay any rent to the woman he resides with. Included in his weekly expenses is $105 weekly that he pays for expenses for Parochial school for his grandchildren who are in Florida, and $171 weekly for payments on the second mortgage. He has liabilities totaling $33,119. His Schedule 2a his financial affidavit shows a balance on a personal loan in the amount of $17,000. That balance is actually $11,823. He shows a Danbury Municipal Credit Union debt on Schedule B of his financial affidavit of $5073, and uses the same $5073 under the category of other personal property to reduce the equity in his 1991 Ford 350 by the amount of that personal loan. In effect, he has claimed the personal loan twice. He owns a 1995 Ford F250 with a value of $15,775, and a 1981 Chevrolet with a value of $500. He also owns utility trailers with a value of $400. He has various bank accounts totaling $904.24, and a deficit in his Union Savings account that is used for his business of $2400. He also has the following life insurance policies: (1) City of Danbury in the face amount of $22,000; (2) Mass. Mutual in the face amount of $50,278, with a cash surrender value of $6357; (3) Jefferson Life in the face amount of $6000; (4) Mass. Mutual Life in the face amount of $41,706, and a cash surrender value of $5625; (5) Security Connecticut in the face amount of $40,000 and a cash surrender value of $2309. He has a worker's compensation claim. He owns under the category of all other assets, guns with a value of $2500; a computer with a value of $500; a tractor with a value of $1800; and tools used for his business.
His financial affidavit shows the value of his tools used for his business to be $2000. From the evidence presented, the court finds that the value of his tools is between $2800 and $3000.
The plaintiff has a Bank One MasterCard liability with a balance of $2685 that was incurred since November, 1999. His financial affidavit shows a personal loan with a balance due of $17,000. That is supposed to represent loans that he has made from the woman he resides with. The actual amount of the loans are approximately $11,800. He has a Sears liability with a balance of $1061 that was incurred since July, 1998. He has a Discover Card liability with a balance of $1414 that was incurred by himself. He has People's MasterCard with a balance of $11,063. of that amount, $5000 was incurred towards paying his attorney's fees, and $3500 was used towards paying the defendant's attorney's fees.
The City of Danbury recognizes Domestic Relations Orders for retirees from the Fire Department. Under the terms of the pension plan for the plaintiff, he receives two-thirds of all salary increases when the prior position that he held with the City of Danbury Fire Department has a CT Page 5506 salary increase. In the event of any order assigning part of the plaintiffs pension plan to the defendant, there will be no benefits to her upon the plaintiffs death. The pension plan also provides free life insurance as well as medical insurance for life for the plaintiff. The defendant has a right to remain on his present disability status for the rest of his life receiving two-thirds of the salary for the rank that he previously held. COBRA benefits are available for the defendant for thirty-six months following the date of dissolution. It is not certain whether the plaintiff can elect the change from receiving heart and hypertension disability benefits to receiving benefits under his pension plan.
The plaintiff retired from his employment in April, 1994. His present gross weekly retirement income is $823. In addition, he does part-time handyman work for which his present gross weekly income is $89.
The plaintiff had worked for the Danbury Fire Department for thirty-one years prior to his retirement. He went out on disability retirement under the heart and hypertension law. When he first retired in 1994, in addition to his disability retirement income, he received $381 weekly for three years. That three year period has now expired. The $823 weekly he receives for disability income is tax free insofar as federal taxes are concerned.
He has a worker's compensation claim for temporary partial benefits, in addition to the benefits he presently receives. The City of Danbury would prefer to settle the plaintiffs temporary partial benefit claim with a lump sum payment.
The defendant was born on October 21, 1940. She presently suffers from vertigo.
The defendant has an interest in a home with her sister. Approximately ten years ago, the home in question located at 1 Triangle Street, Danbury, Connecticut was transferred by the defendant's father and mother to the defendant and her sister with her parents retaining a life interest. Her mother has since died and her father is still alive. The total value of the home is $150,000. The life use restriction of the home reduces its value by $37,500 to $112,500, with the defendant's one-half interest amounting to $56,250.
Although not shown on her financial affidavit, she owns two cemetery plots with the plaintiff with a total fair market value of $1800.
The defendant is employed by an insurance agency with gross weekly earnings of $72 and net weekly income of $57.49. Her financial affidavit CT Page 5507 dated February 3, 2000 shows a number of items under weekly expenses with a star next to them. Those items are all paid for by the plaintiff as a result of an existing pendente lite order. The cost for COBRA benefits for the defendant will be $71.64 weekly. She presently is in therapy with an expense of $21 monthly. She attends therapy once every three weeks. She has a $459 liability to her dentist Dr. Jack Gish. That balance predates the commencement of this divorce and was not covered by health insurance. She also has a $180 liability to her podiatrist, Dr. Michael Fine. There is an estimated liability to the IRS of $182. She also owes approximately $5000 balance to her attorney for representation in this divorce action.
The parties are in dispute regarding the distribution of various items of personal property. The parties are in agreement that Schedule A shown on the defendant's claim for relief are items that should all be awarded to the plaintiff. They are also in agreement that all items shown on Court Exhibit B and Court Exhibit C should also be awarded to the plaintiff. The items that are in dispute are the items that are identified on Court Exhibit D except for item 8 on Court Exhibit D which the parties agree should be awarded to the plaintiff.
The parties jointly own a family home located at 2 Zinn Road, Danbury, Connecticut. The court finds that the fair market value of that home is $235,000. It has a first mortgage with a balance of $125,389.72 and a second mortgage with a balance of $79,142.69. The second mortgage was taken out on November 21, 1997 in the face amount of $80,000. The second mortgage was used to pay the following debts: (a) MBNA America $8962; (b) Chase NA $8221; (c) Advanta NB $7776; (d) DANBCC $4119; (e) Citybank $3283; (f) Chase NA $1726; (g) Sears $359; (h) Discover Card $23; (i) Filene's $22; (j) DMFCU $18,550; (k) Cap City $1537.82; (1) Grand Prix Motor $21,230.10. A camper was purchased in 1991 with a down payment of approximately $18,550 that came from the second mortgage and the balance of approximately $53,000 financed with a fifteen year payout period. The camper is a 1991 Ford 350 recreational vehicle, with a present value of $18,000 and a loan balance of $5073 payable to the Danbury Municipal Credit Union. Twenty-one thousand two hundred thirty ($21,230) dollars of the second mortgage was used to purchase a 1995 Ford F250 that the plaintiff still owns. The fair market value of that vehicle is $15,775.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS CT Page 5508
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is to pay to the defendant alimony in the sum of $1.00 per year.
2. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the defendant.
3. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
4. The plaintiff is to cooperate in order for the defendant to receive COBRA benefits in the event she elects to receive such COBRA benefits. The cost of such benefits are to be divided equally between the parties with the plaintiffs share to terminate upon termination of alimony or thirty-six months from today's date, whichever is sooner.
C. BY WAY OF PROPERTY ORDERS
1. The court awards to the plaintiff all of the items shown on the Schedule A to the defendant's claims for relief dated February 3, 2000, as well as all the items shown on Court Exhibit B and Court Exhibit C. The court also awards the following items shown on Court Exhibit D: (a) guns and ammunition; (b) equipment in recreational vehicle camper; (c) compressors; (d) 12-v-120v VCR in recreational vehicle camper.
2. The court orders that the generator be sold and the net proceeds be split equally between the parties. The court also orders that the two wooden captain chairs be split between the parties with the defendant picking the one that she wants.
3. The stool located in the basement shown as item 9 on Court Exhibit D is also awarded to the plaintiff. All of the remaining items shown on Court Exhibit D are awarded to the defendant. The plaintiff is to remove all items of personal property awarded to him within thirty days from this decision is filed.
4. The court assigns to the defendant by Domestic Relations Order, one- half of the benefits that the plaintiff is now receiving from the City of Danbury under the heart and hypertension statute together with CT Page 5509 one-half of any cost of living or other increases that he receives in said benefits. The court also assigns to the defendant one-half of any benefits that he may receive for his temporary partial disability claim whether those benefits are received as a result of a contested hearing or as a result of a stipulated agreement or as a result of any other proceeding, together with one-half of any cost of living or other increases in said benefit. The one-half assigned to the defendant is after deducting any reasonable attorney's fees incurred by the plaintiff in obtaining such benefit. The court further assigns to the defendant one-half of any other form of worker's compensation benefit that the plaintiff may receive from the City of Danbury, together with one-half of any cost of living or other increases in said benefit. To the extent allowed, all of these assignments are to be by Domestic Relations Order. The court further orders that the City of Danbury Pension Board be informed of these orders and that the one-half to be paid to the defendant is to be paid directly to her by the City of Danbury Pension Board. The court retains jurisdiction of any issues that may arise involving any of the Domestic Relations Orders pursuant to this order. Until such time as the Domestic Relations Order is approved by the City of Danbury Pension Board for the plaintiffs existing payments, he is to pay directly to the defendant one-half of any such payments that he receives from the City of Danbury Pension Board after the date of this order.
5. The plaintiff is ordered to name the defendant as irrevocable beneficiary of unencumbered life insurance policies totaling $70,000. This obligation terminates in the event the defendant predeceases the plaintiff.
The plaintiff is ordered to furnish to the defendant, on the first business day in January and on the first business day in July, proof that he is insured in the specified amount and that the beneficiary of said insurance is as required. In the event that said insurance is not maintained in effect at the time of the plaintiffs death, and in the event the plaintiff has not made a bequest of his will which can be paid from the assets of his estate to the defendant for $70,000, then the shortfall or the full amount of the $70,000, as the case may be, shall constitute a charge upon the plaintiffs estate and an indebtedness of the estate of the plaintiff in favor of the defendant. The plaintiffs obligation is to secure for the defendant the pension payments that she is to receive. Because of the type of plan, in the event of the plaintiffs death, all payments to the defendant under the terms of the pension would forever cease and terminate. Accordingly, this life insurance provision is to secure the property interest that the defendant would have. The plaintiff shall notify his life insurance company that there should be a notice to the defendant as beneficiary if CT Page 5510 there is a lapse in coverage or a change in beneficiary.
6. The court assigns the defendant the two cemetery plots.
7. The 1999 Ford F250, shown on the plaintiffs financial affidavit, is awarded to the plaintiff. The 1981 Chevrolet Citation, shown on both financial affidavits, is awarded to the defendant.
8. All of the bank accounts shown on the plaintiffs financial affidavit are awarded to the plaintiff.
9. The following assets shown on the plaintiffs financial affidavit under the category of "all other assets" are awarded to the plaintiff: (a) nine guns; (b) computer; (c) tools. The tractor is awarded to the defendant. Except as hereinbefore provided, all remaining household furniture and furnishings in the possession of the defendant, are awarded to the defendant.
10. The bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
11. The 1991 Ford 350 recreational vehicle is to be sold and the net proceeds, after paying the credit union debt of approximately $5073 is to be divided as follows: (a) $5000 is first to be paid to the defendant, and the balance if any is to be divided equally between the parties. The plaintiff is responsible for keeping the payments current on the loan on said vehicle until its sale.
12. The utility trailers shown on the plaintiffs financial affidavit are awarded to the plaintiff.
13. All of the cash surrender value on the life insurance policy shown on the plaintiffs financial affidavit is awarded to the plaintiff.
14. The family home is ordered sold and the net proceeds, after deduction for the first mortgage and second mortgage, real estate commission, and customary closing fees, is to initially be divided equally between the parties. Until the closing, the defendant is to keep the first mortgage current and the homeowner's insurance, and the plaintiff is to keep the second mortgage current. The following liabilities are to be paid from the plaintiffs one-half share from the sale of the family home: (a) Sear's liability with a balance of $1061.40; (b) Discover Card liability with a balance of $1447.92; (c) $5000 of the People's MasterCard liability. The following liability are to be paid from the defendant's net proceeds from the sale of the family home: (a) $3500 of the People's MasterCard liability. CT Page 5511
After paying the $5000 towards People's MasterCard liability from the plaintiffs share from the sale of the home, and the $3500 from the defendant's share from the sale of the home, the balance of the People's MasterCard is to be paid equally between the parties from their remaining share from the sale of the family home.
15. The plaintiff is to pay the Bank One MasterCard shown on his financial affidavit and the personal loan due to the woman he is residing with.
15. The defendant is to pay the liabilities shown on her financial affidavit to Dr. Jack Gish, Dr. Michael Fine, and the IRS.
16. Each party is responsible for the payment of their own attorney's fees.
17. All of the defendant's interest in the home located at 1 Triangle Street, Danbury, Connecticut, is awarded to the defendant.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail return receipt or registered mail return receipt within thirty days after such returns have been filed for so long as there is an outstanding alimony order or any violation of such order.
3. The pendente lite orders remain in effect until the date this decision is filed, and any arrearages arising from such orders are not merged into the judgment.
Axelrod, J.